IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RICKY A. YARBROUGH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 09-CV-232-PJC |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Claimant, Ricky A. Yarbrough ("Yarbrough"), pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Yarbrough's application for disability benefits under the Social Security Act. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will be directly to the Tenth Circuit Court of Appeals. Yarbrough appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Yarbrough was not disabled. For the reasons discussed below, the Court **REVERSES AND REMANDS** the Commissioner's decision.

**Claimant's Background**

Yarbrough was 52 years old at the time of the hearing before the ALJ on August 19, 2008. (R. 577, 580). He completed a GED. (R. 583). Yarbrough testified that he failed to complete a course he took at Tulsa Welding School because he broke his hand. *Id.* Yarbrough had a weak earnings history, and he admitted that he had dealt drugs and gone to prison. (R. 585-

86).  He testified that he could not work at the time of the hearing for multiple reasons, including depression and anxiety. (R. 587-88).  His chronic obstructive pulmonary disease ("COPD") made it difficult for him to breathe. (R. 588).  He had trouble sitting due to pain, but he could sit for about 30 minutes to an hour, as long as he could change his sitting position. (R. 588-89).  He had difficulty bending. (R. 589).  He couldn't lift without hurting himself, including a guitar that would weigh approximately 5 to 6 pounds.  *Id.*  He believed he could carry a gallon of milk, but not far, and he did not think he could carry two gallons in a sack. (R. 590).  He had used a cane since an accident in 1991 when a car he was working on fell on him. (R. 590-91).  He could walk without it, but he did not believe his ability to walk was trustworthy, given lack of feeling at times in his left side.  *Id.*

Yarbrough had mental health counseling every two weeks at Grand Lake Mental Health, and he saw the doctor once a month. (R. 591-92).  He testified that he took medications for depression, anxiety, and for pain, as well as medications to help him breathe and to help him sleep. (R. 592).  While the medications helped with those symptoms, he believed that they caused side effects making him tired.  *Id.*

He testified that he limited his activities as much as possible. (R. 594).  He alternated positions between sitting and lying down.  *Id.*  He did not prepare food or do chores around the house. (R. 594-95).  His girlfriend had driven him to the hearing, and Yarbrough testified that he could not drive a car for more than 25 miles due to pain. (R. 595).  It was difficult for him to go outside in the summertime because of his breathing, and in the wintertime because of his arthritis. (R. 595-96).  When he and his girlfriend went to the store, he had trouble walking around the store for long. (R. 596).  He was nervous around people.  *Id.*

While he had used drugs in the past, Yarbrough testified that he had not used drugs for

the six months before the hearing. (R. 597). At the time of the hearing, he was smoking a pack of cigarettes a day. (R. 598).

Department of Corrections medical records were included in the administrative file. (R. 107-366). Records from 1997- 2004 reflect treatment for COPD, back, neck, and head pain, and cellulitis in his left leg. (R. 108-16, 129-44, 176-255). On May 1, 2002, a Chronic Clinic Treatment Plan was completed for hypertension and asthma. (R. 258-59). Some records indicate treatment of psychiatric conditions. (R. 116). Yarbrough was given multiple medications during the 1997-2004 time frame. (R. 107-366).

Yarbrough began treatment at Grand Lake Mental Health Center ("GLMHC") on September 15, 2005. (R. 370-85). His symptoms included depression, irritability, and anxiety, and he was using marijuana. (R. 370). On intake, Yarbrough's Axis I[1] diagnoses were major depressive disorder, recurring, severe, without psychotic features, and cannabis dependence. (R. 383). His current global assessment of functioning ("GAF") was reported as 41, with his highest GAF in the past year assessed as 50. *Id.* Yarbrough was treated regularly with therapy and medication management through 2006. (R. 369, 456-67, 485-509). On December 1, 2005, Yarbrough reported that his medications were working well, and he was playing guitar in a band. (R. 508).

On a GLMHC document dated May 19, 2008, Yarbrough's goal was to get back on medications. (R. 528). His Axis I diagnoses were generalized anxiety, and major depression, recurrent, moderate, and his GAF was assessed as 43. *Id.*

---

[1]   The multiaxial system "facilitates comprehensive and systematic evaluation." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 27 (Text Revision 4th ed. 2000).

Yarbrough was treated by Helen L. Franklin, M.D. for his COPD and back pain in 2005-2006. (R. 468-84). The record also contains treatment notes from the Rogers County Health Department from 2005 to 2007. (R. 544-56).

Yarbrough was seen at Claremore Regional Hospital emergency room on April 7, 2006 for face and hand injuries resulting from a fight. (R. 428-36). His hand injury required subsequent follow up at Hillcrest because of infection. (R. 437-55). He was seen again at the Claremore Regional Hospital on June 14, 2008 with a complaint of shortness of breath. (R. 560-71).

Agency consultant Angelo Dalessandro, D.O. completed a disability examination on December 12, 2005. (R. 396-401). Yarbrough's chief complaint was shortness of breath. (R. 396). Dr. Dalessandro noted tenderness of Yarbrough's cervical spine, and tenderness and decreased range of motion of Yarbrough's shoulders. (R. 398). He noted weakness in Yarbrough's right hand and stated Yarbrough's grip strength as 22 kg for the right hand and 40 kg for the left hand, with the notation of "(3/5)." *Id.* His impressions were asthma, hypertension, and osteoarthritis. *Id.*

The administrative file included a Physical Residual Functional Capacity Assessment, presumably completed by a nonexamining agency consultant, but it was not dated or signed. (R. 406-13). The consultant found exertional abilities consistent with medium work. (R. 407). For explanation, the consultant noted that Yarbrough was not in treatment for his asserted back pain or shortness of breath. *Id.* The consultant summarized the records of psychiatric treatment by GLMHC and Dr. Dalessandro's examination. *Id.* For postural limitations, the consultant found that Yarbrough could only occasionally climb, balance, stoop, kneel, crouch, or crawl, due to back pain. (R. 408). For manipulative limitations, the consultant found that Yarbrough was

4

limited in gross handling due to the decreased strength in his right hand. (R. 409). The consultant found no further limitations. (R. 410-13).

Yarbrough was seen on December 16, 2005 for a psychological evaluation by agency consultant Minor W. Gordon, Ph.D. (R. 402-05). At the time of the examination, Yarbrough was using a cane, and Dr. Gordon noted that Yarbrough's breathing was labored. (R. 403). Dr. Gordon noted symptoms of pain and depression, but found that Yarbrough's memory retention and recall were adequate. (R. 403-04). Dr. Gordon's Axis I diagnosis was adjustment disorder with depressed mood, moderate, secondary to his general medication condition, and he assessed Yarbrough's GAF as 60. (R. 404).

Non-examining agency consultant Tom Shadid completed a Psychiatric Review Technique Form on January 13, 2006, finding that Yarbrough's mental impairments were not severe. (R. 414-27). Dr. Shadid noted Yarbrough's adjustment disorder with depressed mood, due to general medical condition on the form under Listing 12.04. (R. 417). For the "Paragraph B Criteria,"[2] Dr. Shadid found that Yarbrough had only mild limitations of his activities of daily living, social functioning, and concentration, persistence or pace, and he marked a box indicating insufficient evidence regarding episodes of decompensation. (R. 424). In the Consultant's Notes portion of the form, Dr. Shadid noted some of the entries Yarbrough made in the application process, and he summarized Yarbrough's treatment at GLMHC, as well as Dr. Gordon's

---

[2] There are broad categories known as the "Paragraph B Criteria" of the Listing of Impairments used to assess the severity of a mental impairment. The four categories are (1) restriction of activities of daily living, (2) difficulties in maintaining social functioning, (3) difficulties in maintaining concentration, persistence or pace, and (4) repeated episodes of decompensation, each of extended duration. Social Security Ruling ("SSR") 96-8p; 20 C.F.R. Part 404 Subpt P, App. 1 ("Listings") §12.00C. *See also Carpenter v. Astrue*, 537 F.3d 1264, 1268-69 (10th Cir. 2008).

5

consultative examination. (R. 426).

Yarbrough was given more testing at a consultative examination with agency consultant John W. Hickman, Ph.D. on June 6, 2008. (R. 510-20). In the section related to motor functions, Dr. Hickman noted that Yarbrough "was weaker and slower with his right hand than his left probably secondary to having broken his right wrist and hand three times." (R. 514). Dr. Hickman found that Yarbrough functioned in an average range of mental ability, with average working and general memory functions. (R. 515). Dr. Yarbrough stated that the testing reflected no evidence of neuropsychological deficiencies. *Id.* On Axis I, his diagnoses were pain disorder associated with both psychological factors and a general medical condition; depressive disorder; anxiety disorder; nicotine dependence; history of alcohol dependence in remission by claimant report; and history of poly-substance dependence in remission by claimant report. *Id.* On Axis II, Dr. Hickman noted features of a histrionic personality disorder, and he assessed Yarbrough's GAF as 60, reflecting moderate emotional and personality difficulties. (R. 516).

A Medical Source Statement of Ability to do Work-Related Activities (Mental) signed by W. John Mallgren, D.O., from GLMHC, dated August 18, 2008, was submitted. (R. 557-59). The form stated that Yarbrough had significant difficulty with his short term memory, indicating a marked restriction in his ability to understand, remember, and carry out complex instructions, as well as his ability to make judgments on complex work-related decisions. (R. 557). The form also indicated that Yarbrough was easily irritated by others and assessed a moderate restriction in his ability to interact appropriately with the public, with supervisors, and with co-workers. (R. 558).

6

**Procedural History**

On August 24, 2005, Yarbrough filed an application for supplemental security income benefits under Title II, 42 U.S.C. § 401 *et seq.* (R. 59-60). Yarbrough's application for benefits was denied in its entirety initially and on reconsideration. (R. 41-43, 46-49). A hearing before ALJ John W. Belcher was held August 19, 2008, in Tulsa, Oklahoma. (R. 577-611). By decision dated October 31, 2008, the ALJ found that Yarbrough was not disabled at any time through the date of the decision. (R. 19-28). On November 10, 2008, the Appeals Council denied review of the ALJ's findings. (R. 6-9). Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 416.1481.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520.[3] *See also Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988)

---

[3] Step One requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step Two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings"). A claimant suffering from a listed impairment or impairments

7

(detailing steps). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams*, 844 F.2d at 750.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* The court's review is based on the record taken as a whole, and the court will "meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'" *Id., quoting Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The court "may neither reweigh the evidence nor substitute" its discretion for that of the Commissioner. *Hamlin,* 365 F.3d at 1214 (quotation omitted).

### Decision of the Administrative Law Judge

At Step One, the ALJ found that Yarbrough had not engaged in any substantial gainful activity since his filing date of August 24, 2005. (R. 21). At Step Two, the ALJ found Yarbrough had severe impairments of COPD, depression, and degenerative disc disease. (R.

---

"medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to Step Four, where the claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account his age, education, work experience, and RFC, can perform. *See Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

22).[4]

The ALJ determined that Yarbrough had the RFC to perform light work, but with additional limitations as follows:

> [Yarbrough] is limited to occasionally climbing stairs, bending or stooping, balancing, crouching, crawling, or kneeling.  [He] is unable to do any climbing of ladders, ropes, or scaffolding, and should avoid concentrated exposure to extreme temperatures of either cold or heat, and humidity, and avoid concentrated exposure to work environments contaminated by fumes or other atmospheric contaminants.  [He] is further limited to performing work functions which have an habituated work setting and which are object oriented and do not require intense interpersonal relationships with supervisors and coworkers and do not require more than incidental contact with the public.

(R. 23).  At Step Four, the ALJ found that Yarbrough did not have any past relevant work.  (R. 26).  At Step Five, the ALJ found that there were jobs in the economy that Yarbrough could perform with his RFC.  (R. 21).  Therefore, the ALJ found that Yarbrough was not disabled at any time after August 24, 2005.  (R. 21).

## Review

On appeal, Yarbrough asserts errors at Step Five, in the ALJ's analysis of treating physician opinion evidence, and in the ALJ's credibility assessment.  The Court finds that reversal is required because the ALJ's RFC determination did not include the handling limitations assessed by the agency nonexamining consultant, with no explanation of the omission.  Because reversal is required due to the unexplained omission of the handling limitation, the other issues raised by Yarbrough are not discussed.

Generally, the evidence of a nonexamining consultant is given less weight than evidence from other sources.  *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).  However,

---

[4]    It appears that the ALJ did not make a Step Three finding.  (R. 19-28).

even nonexamining consultant opinion evidence must be weighed and explained when the opinions are conflicting. *Shubargo v. Barnhart,* 161 Fed. Appx. 748, 753-54 (10th Cir. 2005) (unpublished). In *Shubargo*, there were several nonexamining opinions, and most of them said that the claimant could do light work, but one opinion said that the claimant could only do sedentary work. *Id.* At the sedentary level, the use of the Grids[5] would determine that the claimant was disabled. *Id.* In his RFC determination, the ALJ found that the claimant could do light work, but he did not explain why he rejected the nonexamining opinion that the claimant could only do sedentary work in favor of the other opinions. The Tenth Circuit found that the case had to be remanded to allow the ALJ to make this explanation. *Id. See also Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) (ALJ's rejection of consulting examiner's opinion evidence by including some restrictions and excluding others required explanation).

Here the undersigned finds no reference in the ALJ's decision to the opinion evidence of the nonexamining consultant. Most of the physical components of the ALJ's RFC determination are more restrictive than those included in the RFC assessment of the nonexamining consultant, such as the ALJ's determination of light work, instead of the consultant's determination of medium work. While it was permissible for the ALJ to differ from the nonexamining consultant's opinion when those differences were in favor of Yarbrough, when he differed in ways that were adverse to Yarbrough, he needed to explain the reason why he varied from the opinion. *See Robinson*, 366 F.3d at 1083 (ALJ "not entitled to pick and choose from a medical opinion, using only those parts of that are favorable to a finding of nondisability"); *Kerwin v. Astrue*, 244 Fed. Appx. 880, 884-85 (10th Cir. 2007) (unpublished) (ALJ's unexplained failure to

---

[5] The Grids are the Medical-Vocational Guidelines set forth in 20 C.F.R. Part 404, Subpart P, Appendix 2.

include handling, fingering, and walking limitations found in consulting examiner's opinion required reversal). Here, as Yarbrough's attorneys point out, the issue of a handling restriction could be relevant at Step Five, because at least some of the jobs relied upon by the ALJ, sorter, mail clerk, and hand packager, required frequent handling. Because the ALJ did not include a handling restriction, and did not explain the omission, the undersigned cannot conclude that the ALJ's Step Five determination is supported by substantial evidence. *See Bowman v. Astrue*, 511 F.3d 1270, 1272-73 (10th Cir. 2008) (Remand was required when the ALJ included "limited use" of the claimant's left hand in the RFC, but failed at Step Four to address the claimant's ability to perform jobs which required frequent handling.).

The undersigned emphasizes that "[n]o particular result" is dictated on remand. *Thompson v. Sullivan*, 987 F.2d 1482, 1492-93 (10th Cir. 1993). This case is remanded only to assure that the correct legal standards are invoked in reaching a decision based on the facts of the case. *Angel v. Barnhart*, 329 F.3d 1208, 1213-14 (10th Cir. 2003), *citing Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988).

Because the error of the ALJ in omitting the handling restriction without explanation requires reversal, the undersigned does not address the remaining contentions of Yarbrough. On remand, the Commissioner should ensure that any new decision sufficiently addresses all issues raised by Yarbrough.

**Conclusion**

Based upon the foregoing, the Court **REVERSES AND REMANDS** the decision of the Commissioner denying disability benefits to Claimant for further proceedings consistent with this Order.

Dated this 21st day of May 2010.

_____
Paul J. Cleary
United States Magistrate Judge